IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ELIZABETH ROSS,

        Plaintiff,

v.                                      Case No. 25-2642-JWB

LIFE CENTERS OF KANSAS, LLC,

        Defendant.

## MEMORANDUM AND ORDER

This matter is before the court on Defendant's partial motion to dismiss.  (Doc. 16.)  The motion is fully briefed and ripe for decision.  (Docs. 17, 27, 29.)  The motion is DENIED IN PART and GRANTED IN PART for the reasons stated herein.

## I.    Facts

The facts set forth below are taken from the first amended complaint ("FAC").  (Doc. 11.) This case is a federal employment discrimination and retaliation action brought by Elizabeth Ross ("Plaintiff") against her former employer, Life Centers of Kansas, LLC ("Defendant"), under the Americans with Disabilities Act ("ADA").[1]  (*Id*. ¶ 1.)

Plaintiff worked as a Direct Services Provider ("DSP") for Defendant from September 2021 until her termination in May 2024.  (*Id*. ¶¶ 6, 11, 12.)  Plaintiff's role involved supporting clients with intellectual and physical disabilities, which required her to assist with wheelchair use and moving clients.  In January 2024, she suffered injuries to her shoulders and neck after slipping on ice at work, which impaired her ability to lift and push clients.  (*Id*. ¶¶ 14, 15.)  She worked with management to arrange informal accommodations that reduced her wheelchair and lifting

---

[1] The governing law is the ADA Amendments Act of 2008 ("ADAAA"), and the court applies the amended statute and regulations.  However, for ease of reference the court continues to use the term "ADA."

duties. Based on those discussions, Plaintiff alleges that management for Defendant was either aware of her disability or perceived her as disabled.

On May 2, 2024, Plaintiff was paired with a coworker, Kathy Burns, to take clients into the community. (*Id*. ¶ 18.) During the outing, Burns was hostile towards Plaintiff, eventually abandoning her alone with the clients when Plaintiff reminded Burns of her physical limitations due to injury. Plaintiff alleges that Burns implied she was faking her injuries. (*Id*. ¶ 20.) In response, Plaintiff texted her scheduling coordinator, Tessa Dunfield, to report Burns' conduct and request not to be assigned with her. Management convened a meeting between Plaintiff and Burns, but it quickly deteriorated when Burns verbally attacked Plaintiff, accusing her of avoiding work and fabricating her injuries. (*Id*. ¶¶ 22, 23.) Presumably during the meeting, Burns also informed Defendant that Plaintiff intended to pursue legal action against them for her workplace injuries. Plaintiff left the meeting upset and said to herself that she quit, though not directing the comment at anyone. Cassandra Meyers from HR, however, overheard Plaintiff's statement. Plaintiff explained she was venting frustration and had no intention of resigning, and Meyers assured her she would disregard any such suggestion. (*Id*. ¶ 28.) But the following day, Meyers contacted Plaintiff and accepted her resignation, despite Plaintiff invoking their prior conversation.

Plaintiff alleges that the real reason for her termination was Burns's statements to management—that Plaintiff was malingering, trying to avoid work, and planning to sue—and that management used the alleged resignation as a pretext to act on those statements.

On December 28, 2024, Plaintiff filed a charge of discrimination with the EEOC, and, on August 12, 2025, received her right to sue letter. (*Id*. ¶¶ 8, 9.) This action was subsequently filed on November 3, 2025. (Doc. 1.) Plaintiff brings two ADA claims: discrimination ("Count I") and retaliation ("Count II"). (Doc. 11.) Defendant seeks dismissal of only Count I. (Doc. 16.)

## II.    Standard

To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiffs. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

## III.    Analysis

Plaintiff asserts that she was discriminated against due to her disability. The ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The elements of an ADA discrimination claim require Plaintiff to show she is: (1) disabled or regarded as disabled, as defined by the ADA, (2) qualified to perform the essential functions of the job, and (3) was terminated "under circumstances which give rise to an inference that the termination was based on [her] disability." *Smothers v. Solvay Chemicals, Inc.*, 740 F.3d 530, 544 (10th Cir. 2014). Defendants challenge the first and third elements.[2] (Doc. 17 at 2.)

But before Plaintiff can bring her claim under the ADA, she "must have exhausted her administrative remedies as to that claim before filing suit." *Edmonds-Radford v. Sw. Airlines Co.*, 17 F.4th 975, 988 (10th Cir. 2021). To do so, Plaintiff must have "timely filed an EEOC charge for which [she] has received a right-to-sue letter." *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1181

---

[2] Because Defendant did not raise arguments regarding the second element, the court assumes for the purposes of this motion that Defendant has conceded that Plaintiff was qualified to perform the essential functions of the job.

3

(10th Cir. 2018) (en banc) (internal quotation marks omitted).  The exhaustion requirement serves two purposes: (1) "to give notice of the alleged violation to the charged party," and (2) "to give the EEOC an opportunity to conciliate the claim."  *Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1170 (10th Cir. 2020).  The ADA allows a plaintiff to proceed under three different theories of disability.  *See* 42 U.S.C. § 12102(1).  Defendant argues that Plaintiff failed to exhaust her administrative remedies as to any "regarded as" theory of disability.  (Doc. 17 at 2–5.)

While courts must construe the charge liberally, it must "contain facts concerning the discriminatory and retaliatory actions underlying each claim," and exhaustion depends on those facts—not on the legal conclusions asserted.  *McDade v. Weston Cnty. Hosp. Dist.*, No. 24-8031, 2025 WL 415481, at *4 (10th Cir. Feb. 6, 2025) (quoting *Smith v. Cheyenne Ret. Invs. L.P.*, 904 F.3d 1159, 1166 (10th Cir. 2018)).  Asserting an actual disability in a charge does not automatically exhaust all three ADA disability theories; the factual allegations must give the EEOC reasonable notice of the specific theory to be advanced in litigation.  *Id*. at *10–11.  In other words, the "ultimate question" regarding exhaustion is whether "the conduct alleged [in the complaint] would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made [in the charge]."  *Smith*, 904 F.3d at 1164–65 (internal quotations omitted and alterations in original).  So, the question here is whether the "regarded as" theory of liability alleged in the complaint would reasonably grow out of the charges actually made in Plaintiff's EEOC charge.  The court finds it would not.

Here, Plaintiff's charge (Doc. 27-1) unambiguously alleged the existence of an actual disability.  A review of the charge reveals that Plaintiff consistently asserted she *was* injured, described the lifting/pushing restrictions that resulted from those injuries, and expressed distress at her coworker's suggestion to the contrary.  (*Id*. ¶¶ 3, 5–6, 9–10.)  The factual thrust of the charge

is that Plaintiff had an actual disability and that her coworker was wrong to imply otherwise.  Those allegations naturally direct an EEOC investigation toward an actual-disability theory; they would not, however, prompt any inquiry into whether Defendant perceived Plaintiff as disabled when she was not.  As Defendant points out, Plaintiff's own framing of the dispute confirms this.  (Doc. 29 at 3.)  The two factual scenarios Plaintiff identifies as possible—either management believed she was really injured, or management believed she was faking—are both logically inconsistent with a "regarded as" theory.  If management believed Plaintiff, it credited an actual disability; if management credited Burns's accusation of malingering, it believed Plaintiff had no disability.  In neither scenario did management regard someone as disabled.  The instant case is therefore unlike *Sink v. Wal-Mart Stores, Inc.*, 147 F. Supp. 2d 1085, 1091 (D. Kan. 2001), to which Plaintiff directs the court's attention.   In that case, the EEOC charge alleged that management had refused to accept a physician's release authorizing the plaintiff to return to work.  *Id*.  This allegation indicates that the plaintiff, while not actually disabled (per the physicians note), was refused permission to return to work because of the manager's perception that the plaintiff was disabled.  *Id*.  That is a scenario where the employer treated the employee as disabled despite contrary medical evidence, placing the EEOC on notice of a "regarded as" claim.  No such allegations exist here.

Plaintiff also argues that the allegations in her FAC support the conclusion that she administratively exhausted her "regarded as" disability theory.  (Doc. 27 at 2, 3, n.1 (citing Doc. 11 ¶ 17).)  This argument is unavailing.  When assessing whether a plaintiff has exhausted administrative remedies, courts focus on the scope of the EEOC charge and not the allegations in the complaint.  *See Lincoln*, 2020 WL 4000912 at *7 ("To exhaust administrative remedies, the charge must contain facts concerning the discriminatory . . . actions") (internal quotations omitted).

Lastly, Plaintiff argues that because she can plead her cause of action in the alternative, she has sufficiently pled her "regarded as" theory. (Doc. 27 at 2.) Defendant, appropriately, does not dispute this and notes that this assertion is of no concern in resolving the underlying question. (Doc. 29 at 2.) Of course, Plaintiff may plead alternative legal theories. However, such theories may only be pled once they have been administratively exhausted. *See Edmonds*, 17 F.4th at 988. Here, Plaintiff has not carried her burden to show she administratively exhausted her "regarded as" theory of liability under her ADA discrimination claim—so it is barred. Accordingly, Plaintiff's ADA discrimination claim proceeds only on an actual-disability theory.

Having dismissed the "regarded as" theory on exhaustion grounds, the court turns to whether Plaintiff has plausibly alleged an actual disability.[3] On the disability element, Defendant argues that Plaintiff's allegations are insufficient and conclusory because she identified only discrete job-related tasks—pushing wheelchairs and lifting clients—rather than a limitation on a major life activity. (Docs. 17 at 4–5; 29 at 4–5.) Plaintiff responds that she identified her injury with specificity (shoulder and neck injuries from a January 2024 workplace fall), described its duration through the end of her employment, and alleged that it limited her ability to lift and push— both are recognized major life activities under the ADA. (Doc. 27 at 1–2.) Plaintiff further notes that the Tenth Circuit does not require a precise description of the major life activity at the pleading stage. *Allen v. SouthCrest Hosp.*, 455 F. App'x 827, 832 n.5 (10th Cir. 2011) ("[Plaintiff] was not required to provide a precise description of the major life activity allegedly affected by her disability."). The court finds Plaintiff has sufficiently pled an actual disability under the ADA.

The ADA lists "lifting" as an example of a major life activity. 29 C.F.R. § 1630.2(i)(1)(i). At this stage, Plaintiff's allegations that she suffered injuries to her shoulders and neck in January

---

[3] Defendant concedes that Plaintiff exhausted her ADA discrimination claim under an actual disability theory. (Doc. 17 at 4.) In reviewing the charge, the court agrees. (Doc. 27-1.)

2024 that imposed lifting and pushing restrictions lasting through the remainder of her employment plausibly suggest a substantial limitation on a major life activity.  This case is distinguishable from this court's prior case cited by Defendant, where the plaintiff alleged only the need for more frequent restroom breaks that bore a more attenuated relationship to a recognized major life activity.  *See Castro v. Dot's Pretzels, LLC*, No. 20-2579-JWB, 2021 U.S. Dist. LEXIS 156471, at *21 (D. Kan. Aug. 19, 2021).  Unlike in *Castro*, Plaintiff here alleges severe impairments, resulting in a formal accommodation arrangement with management.  While the allegations are not elaborate, they are sufficient at this stage to plausibly allege that Plaintiff is disabled within the meaning of the ADA.  Defendants' motion on this ground is denied.

As to the third element, Defendant argues that all of the alleged discriminatory conduct is attributable only to Burns, a coworker with no supervisory authority, and that Plaintiff's "cat's paw"[4] theory—also known as subordinate bias liability—fails because there are no factual allegations linking Burns's bias to the termination decision.  (Docs. 17 at 5–7; 29 at 5–7.)  Defendant further contends that the FAC undermines discriminatory intent by showing that management granted Plaintiff's accommodation request and convened a meeting to address the workplace conflict.  (Doc. 17 at 6.)  Plaintiff responds that she has sufficiently alleged a subordinate bias liability claim: a biased coworker (Burns) communicated her animus directly to management and management terminated Plaintiff the next day. (Doc. 27 at 4–6.)  Plaintiff argues that a biased subordinate need not have supervisory authority for the theory to apply—it is enough that the subordinate's conduct was the proximate cause of the adverse decision.  The court agrees.

Under the subordinate bias liability theory, a plaintiff can establish employer liability by showing that a "biased subordinate's discriminatory reports, recommendation, or other actions

---

[4] *See E.E.O.C. v. BCI Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476, 484 (10th Cir. 2006) (describing the fable from which the "cat's paw" doctrine derives its name).

caused the adverse employment action." *EEOC v. BCI Coca-Cola Bottling Co.*, 450 F.3d 476, 487 (10th Cir. 2006). Here, Plaintiff alleges that Burns angrily accused her of malingering and of planning to sue Defendant in a meeting that management itself convened. Further, that Defendant terminated Plaintiff the following day, refusing to honor the HR representative's own assurance that the offhand "I quit" statement would be disregarded. (Doc. 11 ¶¶ 22–28.) Taking those allegations as true, it is plausible that Burns' statements at the meeting influenced the termination decision. While Defendant focuses its argument on lack of facts regarding what, if any, influence Burns exercised on management, the close temporal proximity between the meeting and termination supports an inference that Burns may have influenced the decision to terminate. Defendant's contention that management conducted an independent investigation is a factual dispute that cannot be resolved at the pleading stage. Finally, Defendants suggest that the biased subordinate liability theory only applies to "subordinate supervisors" and not "coworkers," such as Burns. (Doc. 17 at 5–6.) The cases Defendant cites do not support that proposition and the court can otherwise find none. In summary, the allegations here are sufficient to plausibly connect Burns' conduct to the termination decision. Defendants' motion on this ground is denied.

## IV.    Conclusion

THEREFORE, Defendant's partial motion to dismiss (Doc. 16) is DENIED IN PART and GRANTED IN PART. Plaintiff's "regarded as" theory of liability is barred for failure to exhaust administrative remedies. Plaintiff, however, has sufficiently pled an ADA discrimination claim.

IT IS SO ORDERED. Dated this 22nd day of April, 2026.

__s/ John W. Broomes_____
JOHN W. BROOMES
CHIEF UNITED STATES DISTRICT JUDGE